JOHN HUNTER, RESPONDENT, v. THE SAVAGE CON-
SOLIDATED SILVER MINING COMPANY, APPELLANTS.

LABORERS' LIEN ON MINING CLAIM.    The Act of Feb. 6th, 1867, allowing liens in favor of laborers for work done on mining claims (Statutes of 1867, 48) did not give a lien for labor done before its passage.

PRACTICE—MODIFYING ERRONEOUS JUDGMENT FOR LIEN.    Where a judgment of lien was rendered against a mining claim for work done on it partly before and partly after the passage of the Statute of Feb. 6th, 1867, allowing such lien :- Held, that it should be so modified as to allow a lien only for the work done after the passage of the Act, the amount of which should be ascertained in the Court below, and an ordinary judgment for the balance.

TAKING EFFECT OF LIEN LAW.    Where a lien law was intended to apply only to labor thereafter done: Held, that the first day's labor for which a lien could attach was not the day of the passage of the statute, but the day after.

APPEAL from the District Court of the Sixth Judicial District, Lander County.

The plaintiff filed his notice of lien on June 22d, 1867, for a balance of $605.34 for mining labor performed as a principal contractor.    The other persons referred to in the opinion, who filed liens, were:  O. F. Taylor, on May 6th, 1867, for $171;  G. W.

11

Maylone, on May 6th, 1867, $204.25; N. W. Warner, on May 6th, 1867, for $100; F. X. Eberle, on May 7th, 1867, for $789.25; Thomas Hunter, on May 22d, 1867, for $1,002.25; Alexander McCubbin, on May 7th, 1867, for $529.37½; and Louis Bergert, on May 7th, 1867, for $272.65½.

*George S. Hupp* and *R. M. Clarke*, for Appellants.

*Henry Mayenbaum* and *Samuel C. Denson*, for Respondent.

By the Court, BEATTY, C. J.

This was a bill filed by John Hunter to foreclose a miner's lien on the mining claims and property of defendant. Some other parties besides John Hunter come in under the statutory proceeding provided in such case, and also assert their liens.

The facts of the case, as they appear by the findings, are, that John Hunter and two other parties who intervened in this case commenced work for the defendant, a corporation, in the latter part of the year 1866; two more of the intervenors commenced in January, 1867. All these parties continued work, down to say some time in May, 1867. Three other intervenors commenced work on or after the 15th of February, 1867, and continued down to some time in May of that year.

Prior to February 6th, 1867, there was no law allowing liens upon mining claims for labor, such as appears to have been done in these cases. On that day, however, a law was approved and went into effect allowing liens in favor of laborers for work done on mining claims. Those who had commenced work before the new lien law went into operation filed a lien, as well for the work done before as after the passage of the law.

The Court below gave a decree allowing a lien in favor of the laborers from the first day they commenced work. In our opinion this was error. The law by its terms does not purport to give a lien for labor done before its passage. It was evidently the intention to give the lien only to secure the payment of wages for work done after its passage. The decree then will have to be so modified as only to allow a lien to take effect for such labor as was per-

formed after February 6th, 1867. The facts found do not show how much of the labor was done before, and how much after that date. It will therefore be necessary to open the case in the Court below so far as to ascertain what proportion of work was done before and what after the law was passed.

Several of the parties received payments of part of their wages whilst at work. These payments will be deducted in the first place from the labor done at the earliest period, and before the passage of the act securing a lien. No part of the payments will be applied on the debt secured by lien except where the payments exceed the debt due for labor performed before the lien law was passed. Then, after ascertaining what portion of the debt of each of the parties is secured by lien, a decree will be entered against the property of appellants described in the several lien claims. For the balance of the debt due to each an ordinary judgment will be entered.

We regret having to reverse this case, because no substantial right of appellants has probably been affected. It can make but little difference to the corporation whether its property be sold in pursuance of a decree to foreclose a mechanic's lien or under an ordinary execution. If the property is sold under a decree, and there is any surplus after paying the liens, the Court could properly order it to satisfy the executions. But the defendant would, upon paying the amount of the decree for miners' liens, be entitled to have the real estate reserved and exempted from sale until its personal estate was exhausted. Strictly, then, the decree should not establish any lien dating prior to February 7th, 1867.

As the law was approved on the 6th, and the fractions of days cannot well be estimated in a case of this kind, the first day's labor for which a lien should attach would be the first day's work done either on or after February 7th. The complaint does not show that the plaintiff performed any labor of such a character as would entitle him to a lien under the law as it stood in 1861, but some of the intervenors may have shown that they performed labor for which they had a lien under the old law. The case will be so far opened as to allow any of the parties thereto to show the extent of their liens and to let in any proof on the part of defendant tending to

diminish the extent of these liens. So far as the amount of the demands established by the plaintiff and the intervenors are concerned, we see no reason for opening the decree.

Judgment reversed and cause remanded for further proceedings, in accordance with this opinion.