556

In RE: FONTAINEBLEAU LAS VEGAS HOLDINGS, LLC.

WILMINGTON TRUST FSB, AS ADMINISTRATIVE AGENT, APPELLANT, *v.* A1 CONCRETE CUTTING & DEMOLITION, LLC; A COMPANY PORTABLE RESTROOMS, INC., DBA A COMPANY, INC.; A TRACK-OUT SOLUTION LLC; ABATIX ENVIRONMENTAL CORP., DBA ABATIX CORP.; ABSOCOLD CORPORATION, DBA ECON APPLIANCE; ABSOLUTE METALS, LLC; AHERN RENTALS, INC.; AIR DESIGN TECHNOLOGIES, LLC; AIR SYSTEMS, INC.; AIRTEK PRODUCTS LLC; AK CONSTRUCTORS, INC.; ALABAMA METAL INDUSTRIES CORPORATION; ALLEGHENY MILLWORK PBT, DBA ALLEGHENY MILLWORK & LUMBER CO.; ALLEN DRILLING INC.; ALPINE STEEL LLC; AMERICAN AIR BALANCE CO., INC.; AMERICAN CRANE & HOIST ERECTORS, LLC; AMERICAN METAL FABRICATORS LLC; AMERICAN PACIFIC EXCAVATION INC.; AMERICAN SAND & GRAVEL, LTD.; ANIXTER INC., DBA ANIXTER INTERNATIONAL INC.; APEX CONCRETE CUTTING AND CORING, INC.; ARCELORMITTAL INTERNATIONAL AMERICA, LLC; ARCHITECTURAL MATERIALS INC., DBA AARON SMITH OF ARCHITECTURAL MATERIALS, INC.; ARCON FLOORING, INC.; ARIZONA TILE, LLC; ATLAS CONSTRUCTION CLEANUP INC.; ATLAS CONSTRUCTION SUPPLY, INC.; ATSS, INC., DBA ALLIED TRENCH SHORING SERVICE TRAFFIC CONTROL SERVICE, INC.; AUSTIN GENERAL CONTRACTING, INC.; AUSTIN HARDWOODS, INC.; AZ-PUS, INC.; AZTECH INSPECTION SERVICES, LLC; BAKERSFIELD PIPE AND SUPPLY, INC.; BERGMAN, WALLS, & ASSOCIATES, LTD.—ARCHITECTS; BESAM U.S., INC., DBA BESAM ENTRANCE SOLUTIONS; BESAM WEST, INC., DBA BESAM ENTRANCE SOLUTIONS; BOETHING TREELAND FARMS, INC.; BRADFORD PRODUCTS, LLC; BROWN-STRAUSS STEEL SALES, INC.; BURKE ENGINEERING CO.; C.R. LAURENCE CO., INC.; CADILLAC STONE WORKS, LLC; CALIFORNIA FLEX CORPORATION; CALIFORNIA WHOLESALE MATERIAL SUPPLY, LLC, DBA CALPLY DOOR SYSTEMS LV INC.; CARRARA MARBLE COMPANY OF AMERICA; CASHMAN EQUIPMENT COMPANY; CCCS INTERNATIONAL LLC; CECO CONCRETE CONSTRUCTION, LLC; CELLCRETE CORPORATION; CEMEX CONSTRUCTION MATERIALS PACIFIC, LLC; CENTURY STEEL, INC.; CHEROKEE ERECTING COMPANY, LLC; CITY ELECTRIC SUPPLY

COMPANY; CLARK COUNTY FENCE COMPANY, LLC; CLQTS, LLC, FKA COMPASS LOGISTICS; CMC GROUP, LLC; CODALE ELECTRIC SUPPLY, INC.; COLLINGS INTERIORS, LLC; COMMERCIAL SCAFFOLDING OF NEVADA, INC.; COMMERCIAL ROOFERS, INC.; COMMUNICATIONS SUPPLY CORPORATION; CONCRETE CORING OF NEVADA, INC.; CONSTRUCTION SEALANTS SUPPLY, INC.; CONSUMERS PIPE AND SUPPLY CO.; CONTI ELECTRIC, INC.; CONTINENTAL GLASS & HARDWARE, INC.; COPPER STATE BOLT & NUT COMPANY, INC.; CORESLAB STRUCTURES (L.A.) INC.; CRESCENT ELECTRIC SUPPLY COMPANY, INC.; CUMMINS ROCKY MOUNTAIN, LLC; CURTIS STEEL CO., INC.; CWCI INSULATION OF NEVADA INC.; D&D STEEL, INC.; D'ALESSIO CONTRACTING, INC.; DAL-TILE CORPORATION; DANA KEPNER COMPANY, INC.; DERR AND GRUENEWALD CONSTRUCTION CO.; DESERT LUMBER LLC; DESERT PLUMBING & HEATING CO., INC.; DESIGN SPACE MODULAR BUILDINGS, INC.; DIELCO CRANE SERVICE, INC.; DIRECT PAVING & GRADING; DIRECT PAVING & GRADING, LLC; DIVERSIFIED CONCRETE CUTTING, INC.; DIVERSIFIED CONSTRUCTION SUPPLY, LLC; DOOR & HARDWARE MANAGEMENT, INC.; DOORKO, INC.; DSE CONSTRUCTION, INC.; DUNN-EDWARDS CORPORATION; EAGLE ENTERPRISES OF TN LLC; EAST IOWA DECKS SUPPORT, INC.; EBERHARD/SOUTHWEST ROOFING, INC.; EGGERS INDUSTRIES, INC.; EIDS STEEL COMPANY, LLC; ELMCO/FORD, INC., DBA ELMCO MECHANICAL LAS VEGAS; EM&C TRUCKING, LLC; EMBASSY GLASS; EMBASSY STEEL; ENERGY PRODUCTS OF NEVADA, INC.; ENGINEERED EQ. & SYSTEMS CO.; EUGENIO PAINTING COMPANY; F. RODGERS CORPORATION; FASTENERS INC. SOUTHWESTERN SUPPLY; FERGUSON ENTERPRISES, INC.; FF&E PURCHASING ASSOCIATES, LLC; FISK ELECTRIC COMPANY; FLIPPIN'S TRENCHING, LLP; FOUNTAIN SUPPLY COMPANY; FREHNER CONSTRUCTION COMPANY, INC.; GALLAGHER-KAISER CORPORATION; GARRETT MATERIALS, LLC, DBA GARRETT MATERIALS PROBUILD; GENERAL SUPPLY & SERVICES, INC., DBA GEXPRO; GEO CELL SOLUTIONS, INC., FKA GEO CELL SOLUTIONS, LLC; GEORGE M. RAYMOND CO.; GILLETTE CONSTRUCTION, LLC; GIROUX GLASS, INC.; GLENN RIEDER, INC.; GLOBAL SERVICES OF NEVADA, INC.; GRANI INSTALLATION INC.; GRAYBAR ELECTRIC

COMPANY, INC.; H&E EQUIPMENT SERVICES, INC.; HALTON CO.; HAMMOND CAULKING, INC.; HAMPTON TEDDER ELECTRIC COMPANY; HAMPTON TEDDER TECHNICAL SERVICES; HARRINGTON INDUSTRIAL PLASTICS, LLC; HARSCO CORPORATION, DBA PATENT CONSTRUCTION SYSTEMS; HD SUPPLY CONSTRUCTION SUPPLY, LIMITED PARTNERSHIP, DBA HD SUPPLY INC.; HD SUPPLY WATERWORKS, LP; HD SUPPLY WATERWORKS, LP, DBA HD SUPPLY WATERWORKS PC REGION; HD SUPPLY WATERWORKS, LP, DBA HD SUPPLY WHITE CAP; HEATING AND COOLING SUPPLY, INC.; HELOU & SONS, INC., DBA HELOU CONSTRUCTION, INC.; HENRI SPECIALTIES CO., INC., OF NEVADA; HERSHBERGER BROS. WELDING, INC.; HERTZ EQUIPMENT RENTAL CORPORATION; HILTI, INC.; HOTZ, LLC, DBA DRI-DESIGN; IBA CONSULTANTS WEST, LLC; IDEAL MECHANICAL, INC.; ILLUMINATING CONCEPTS, LTD.; INNCOM INTERNATIONAL, INC.; INSTEEL, LLC; INSULFOAM LLC; INSULPRO PROJECTS, INC., DBA GALE BUILDING PRODUCTS; INTEGRATED MECHANICAL GROUP, LLC, DBA IMG MECHANICAL GROUP; INTERMOUNTAIN LOCK & SUPPLY CO., DBA INTERMOUNTAIN LOCK & SECURITY; ITAL STONE, INC.; J&J ENTERPRISES SERVICES, INC.; J.F. DUNCAN INDUSTRIES, INC., DBA DURAY; J.B.A. CONSULTING ENGINEERS, INC.; JANIS SERVICES WEST, LLC; JENSEN ENTERPRISES, INC., DBA JENSEN PRECAST; JOHN A. MARTIN & ASSOCIATES OF NEVADA, INC.; JOHNSON CONTROLS, INC.; JOHNSON CONTROLS, INC., DBA JPRA ARCHITECTS, P.C.; JS&S, INC.; K&K CONSTRUCTION SUPPLY, INC.; KCG, INC., DBA REW MATERIALS; KEENAN, HOPKINS, SUDER & STOWELL CONTRACTORS, INC.; KELLY'S PIPE & SUPPLY CO., INC.; KIMLEY-HORN AND ASSOCIATES, INC.; KNORR SYSTEMS, INC.; L&P INTERIORS, LLC; L&W SUPPLY CORPORATION, DBA CALPLY; L.A. NEVADA, INC., DBA G&G SYSTEMS; LALLY STEEL, INC.; LANGAN ENGINEERING & ENVIRONMENTAL SERVICES, INC.; LAS VEGAS AWNINGS, LLC; LAS VEGAS PAVING CORPORATION; LAS VEGAS ROOFING SUPPLY, LLC; LAS VEGAS WINDUSTRIAL CO.; LEWIS CRANE & HOIST, LLC; LOCHSA, LLC, DBA LOCHSA ENGINEERING; LONE MOUNTAIN EXCAVATION & UTILITIES, LLC; LUKZ TRUCKING, INC.; LVI ENVIRONMENTAL OF

NEVADA, INC.; M&H BUILDING SPECIALTIES, INC.; MAC ARTHUR CO.; MARNELL MASONRY, INC.; McKEON DOOR OF NEVADA, INC.; MECHANICAL INSULATION SPECIALISTS; MECHANICAL PRODUCTS NEVADA, INC.; MECHANICAL SYSTEMS WEST, INC.; MERLI CONCRETE PUMPING OF NEVADA, INC.; METAL-WELD SPECIALTIES, INC.; MIDWEST DRYWALL CO., INC.; MIDWEST PRO PAINTING, INC.; MIGHTY CRANE SERVICE, LLC; MITCHELL CONSTRUCTION SERVICES, INC., DBA WESTERN DIAMOND; MODERNFOLD OF NEVADA, LLC; MOJAVE ELECTRIC COMPANY, LLC, AKA WEST EDNA ASSOCIATES, DBA MOJAVE ELECTRIC, INC.; MORRIS-SHEA BRIDGE COMPANY, INC.; MUNDEE TRUCKING, INC.; NEDCO SUPPLY; NES RENTALS HOLDINGS, INC., DBA NES RENTALS; NEVADA CONSTRUCTION CLEAN-UP; NEVADA READY MIX CORPORATION; NORMAN S. WRIGHT MECHANICAL EQUIPMENT CORPORATION; NOVA ENGINEERING AND ENVIRONMENTAL OF NEVADA, INC., FKA OWENS GEOTECHNICAL INC.; OLDCASTLE GLASS, INC., DBA OLDCASTLE GLASS WRIGHT CITY; OLSON PRECAST COMPANY; ORECO DUCT SYSTEMS, INC.; OSSIS IRON WORKS; P&S METALS; PACIFIC COAST STEEL, INC.; PACIFIC INSULATION COMPANY; PACIFIC STAIR CO.; PAHOR MECHANICAL CONTRACTORS, INC.; PAPÉ MATERIAL HANDLING, INC., AKA PAPÉ MATERIAL HOLDING, DBA PAPÉ RENTS; PAR ELECTRICAL CONTRACTORS, INC.; PARAMOUNT MANAGEMENT ENTERPRISES, LTD.; PARAMOUNT SCAFFOLD, INC.; PARTITION SPECIALTIES, INC.; PAUL BEBBLE & ASSOCIATES, INC.; PDM STEEL SERVICE CENTERS, INC.; PENHALL COMPANY; PERFORMANCE CONTRACTING, INC.; POTTER ROEMER; POWELL CABINET & FIXTURE CO.; PREMIER STEEL, INC.; PRIMARY STEEL, INC.; PRIME CONTRACTING, INC., DBA PRIME GRADING & PAVING; PRIME FABRICATION & SUPPLY; QED, INC.; QTS LOGISTICS, INC., DBA QUALITY TRANSPORTATION SERVICES OF NEVADA, INC.; QUALITY CABINET AND FIXTURE COMPANY; QUALITY TRANSPORTATION SERVICES OF NEVADA, INC.; QUICK CRETE PRODUCTS CORP.; RAM CONSTRUCTION SERVICES OF MICHIGAN, INC.; RAMON FERNANDEZ, AS ADMINISTRATOR OF THE ESTATE OF ANA FERNANDEZ; RAUL ESCOBEDO; RC WHITE CON-

SULTING, INC.; READY MIX, INC., DBA READY MIX CONCRETE; RED MOUNTAIN MACHINERY COMPANY; RELIABLE STEEL, INC.; REPUBLIC CRANE, LLC; RJF INTERNATIONAL CORP.; ROADSAFE TRAFFIC SYSTEMS, INC., F/K/A NES TRAFFIC SAFETY LP; ROCKWAY PRECAST, INC.; RONCELLI, INC.; RSC EQUIPMENT RENTAL, INC.; SAFE ELECTRONICS, INC.; SAFEWORKS LLC; SC STEEL, INC.; SIERRA GLASS & MIRROR, INC.; SILVER STATE MARBLE, LLC; SILVERADO ASSOCIATES, LLC; SMALLEY & COMPANY; SMITH PIPE & STEEL COMPANY (WHICH WILL DO BUSINESS IN CALIFORNIA AS CAZ STEEL COMPANY); SMK, INC.; SOUTHERN NEVADA PAVING, INC.; SOUTHWEST IRON WORKS, LLC; SQUIRES LUMBER COMPANY; STARLITE CONSTRUCTION, INC., DBA SHAWMUT DESIGN & CONSTRUCTION; STEEL ENGINEERS, INC.; STEEL STRUCTURES, INC.; STEELMAN PARTNERS, LLP; STERLING CORPORATE CUSTOM ELEVATOR INTERIORS; STETSON ELECTRIC, INC.; STINGER WELDING, INC.; STONE CONNECTION, LLC, DBA SAMFET; STRIPING SOLUTIONS, INC.; SUMMIT EXCAVATION, INC.; SUMMIT SAND & GRAVEL, INC.; SUNBELT RENTALS, INC.; SUNSTATE EQUIPMENT CO., LLC; SUPERIOR TILE & MARBLE, INC.; SYRACUSE CASTINGS WEST CORP.; T. NICKOLAS CO.; TECHNICOAT MANAGEMENT, INC.; THE GLIDDEN COMPANY, DBA ICI PAINTS; THE PENTA BUILDING GROUP, LLC; THE SHERWIN-WILLIAMS COMPANY; THE SOUTHWEST CIRCLE GROUP, INC.; THE WINROC CORPORATION (NEVADA); THYSSEN ELEVATOR CORPORATION; THYSSENKRUPP SAFWAY, INC., DBA SAFWAY SERVICES INC. (LV); THYSSENKRUPP SAFWAY, INC.; TMCX NEVADA, LLC; TOMARCO CONTRACTOR SPECIALTIES, INC.; TOTTEN TUBES, INC.; TRACTEL, INC.; TRACY & RYDER LANDSCAPE, INC.; TRENCH PLATE RENTAL CO.; TRI-POWER GROUP, INC.; ULMA FORM-WORKS, INC.; UNION ERECTORS, LLC; UNITED RENTALS GULF, LLC; UNITED RENTALS NORTHWEST, INC.; UNIVERSAL PIPING, INC.; VALLEYCREST LANDSCAPE DEVELOPMENT, INC.; VENTURA MARBLE, LLC; VFC, INC.; W&W STEEL, LLC OF NEVADA; W.R. GRACE & CO.-CONN., DBA GRACE CONSTRUCTION PRODUCTS; WACO INTERNATIONAL (WEST), INC., DBA WACO SCAFFOLDING & EQUIPMENT; WALNUT INVESTMENT CO., LLC, DBA ACOUSTICAL MATERIAL SERV-

ICES; WARD & HOWES ASSOCIATES, LTD.; WASHOUT SYSTEMS, LLC; WATER FX, LLC; WELLS CARGO, INC.; WHITE CAP CONSTRUCTION SUPPLY, INC.; WILLIAMS FURNACE CO.; WINTER COMPOSITES, LLC; YOUNG ELECTRIC SIGN COMPANY; YWS ARCHITECTS, LLC; ZETIAN SYSTEMS, INC.; Z-GLASS, INC., DBA Z WALL INC.; Z-GLASS, INC.; AND JMB CAPITAL PARTNERS MASTER FUND LLP, AS ASSIGNEE OF ALL CLAIMS HELD BY ASSIGNOR LIEN CLAIMANTS ADERHOLDT SPECIALTY COMPANY, INC., AMI HOSPITALITY, LLC, AKA ARCHITECTURAL MATERIALS INCORPORATED, BOMBARD ELECTRIC, LLC, BOMBARD MECHANICAL, LLC, COLASANTI SPECIALTY SERVICES, INC., DESERT FIRE PROTECTION, PEREGRINE INSTALLATION, CO., AND WARNER ENTERPRISES, INC., DBA SUN VALLEY ELECTRIC SUPPLY CO., RESPONDENTS.

No. 56452

October 25, 2012                                   289 P.3d 1199

*Parsons Behle & Latimer* and *Rew R. Goodenow*, Reno, for Appellant Wilmington Trust FSB.

*Thomas L. Abrams*, Plantation, Florida, for Respondents Ahern Rentals, Inc.; and Reliable Steel, Inc.

*Baker Hostetler* and *Richard J. Bernard*, New York, New York, for Respondents Coreslab Structures (L.A.) Inc.; Keenan, Hop-

kins, Suder & Stowell Contractors, Inc.; QTS Logistics, Inc.; and Quality Transportation Services of Nevada, Inc.

*Carla M. Barrow*, Coral Gables, Florida, for Respondent Fisk Electric Company.

*Brown Robert LLP* and *Seth P. Robert*, Fort Lauderdale, Florida, for Respondent McKeon Door of Nevada, Inc.

*Cooksey, Toolen, Gage, Duffy & Woog* and *Andrew R. Muehlbauer*, Las Vegas, for Respondent Steelman Partners, LLP.

*Shea & Carlyon, Ltd.*, and *Candace C. Carlyon*, Las Vegas, for Respondent Young Electric Sign Company.

*Duane Morris LLP* and *Jeffrey W. Spear*, Pittsburgh, Pennsylvania; *Duane Morris LLP* and *Warren D. Zaffuto*, Miami, Florida, for Respondents Century Steel, Inc.; and Pacific Coast Steel, Inc.

*Ehrenstein Charbonneau Calderin* and *Robert P. Charbonneau* and *Daniel L. Gold*, Miami, Florida, for Respondents Absocold Corporation; Austin General Contracting, Inc.; Austin Hardwoods, Inc.; Glenn Rieder, Inc.; Powell Cabinet & Fixture Co.; Safe Electronics, Inc.; Stone Connection, LLC; and Union Erectors, LLC.

*Fahrendorf, Viloria, Oliphant & Oster, LLP*, and *Scott F. Gilles* and *Jason A. Rose*, Reno, for Respondents Bradford Products, LLC; and Insteel, LLC.

*Gibbs, Giden, Locher, Turner & Senet LLP* and *Becky Ann Pintar*, Las Vegas, for Respondents D'Alessio Contracting, Inc.; and WACO International (West), Inc.

*Gordon & Rees LLP* and *Robert E. Schumacher* and *Jon M. Ludwig*, Las Vegas; *Ehrenstein Charbonneau Calderin* and *Robert P. Charbonneau* and *Daniel L. Gold*, Miami, Florida, for Respondent JMB Capital Partners Master Fund LLP.

*Gordon Silver* and *Gregory E. Garman, Thomas H. Fell*, and *Gabrielle A. Hamm*, Las Vegas, for Respondents Southern Nevada Paving, Inc.; Air Design Technologies, LLC; AirTek Products LLC; Cadillac Stone Works, LLC; Cemex Construction Materials Pacific, LLC; Collings Interiors, LLC; Commercial Roofers, Inc.; Conti Electric, Inc.; Desert Plumbing & Heating Co., Inc.; Eberhard/Southwest Roofing, Inc.; EIDS Steel Company, LLC; Gallagher-Kaiser Corporation; Geo Cell Solutions, Inc.; Inncom International, Inc.; J.F. Duncan Industries, Inc.;

JS&S, Inc.; Lally Steel, Inc.; L.A. Nevada Inc.; LVI Environmental of Nevada, Inc.; Marnell Masonry, Inc.; Mechanical Insulation Specialists; Midwest Drywall Co., Inc.; Midwest Pro Painting, Inc.; Modernfold of Nevada, LLC; Mojave Electric Company, LLC; Paramount Management Enterprises, Ltd.; Penhall Company; Performance Contracting, Inc.; Ram Construction Services of Michigan, Inc.; Silver State Marble, LLC; Superior Tile & Marble, Inc.; The PENTA Building Group, LLC; Technicoat Management, Inc.; Universal Piping, Inc.; W&W Steel, LLC of Nevada; Water FX, LLC; and Wells Cargo, Inc.

*Herold & Sager* and *Emily L. Grant* and *Linda L. Sager*, Encinitas, California, for Respondent Ital Stone, Inc.

*John C. Dotterrer Counsellors at Law* and *John C. Dotterrer* and *Jenny Torres*, Palm Beach, Florida, for Respondents Kimley-Horn and Associates, Inc.; Nova Engineering and Environmental of Nevada, Inc.; and Valleycrest Landscape Development, Inc.

*Leiderman Shelomith, P.A.*, and *Zach B. Shelomith*, Fort Lauderdale, Florida, for Respondent KCG, Inc.

*Markowitz, Davis, Ringel & Trusty, P.A.*, and *Ross R. Hartog*, Miami, Florida; *John R. Stevenson*, Birmingham, Michigan, for Respondent Eugenio Painting Company.

*May, Meacham & Davell, P.A.*, and *Robert C. Meacham*, Fort Lauderdale, Florida, for Respondents Cashman Equipment Company; Communications Supply Corporation; Crescent Electric Supply Company, Inc.; Derr and Gruenewald Construction Co.; Graybar Electric Company, Inc., H&E Equipment Services, Inc.; Hilti, Inc.; Integrated Mechanical Group, LLC; Morris-Shea Bridge Company, Inc.; Quality Cabinet and Fixture Company; Sierra Glass & Mirror, Inc.; Tracy & Ryder Landscape, Inc.; W.R. Grace & Co.-Conn.; Zetian Systems, Inc.; and Z-Glass, Inc.

*McAlpine & Associates* and *Don W. Blevins*, Auburn Hills, Michigan; *Lawrence H. Meuers*, Naples, Florida, for Respondent CCCS International LLC.

*McDonald Hopkins, LLC*, and *Tina M. Talarchyk*, West Palm Beach, Florida, for Respondents Giroux Glass, Inc.; and John A. Martin & Associates of Nevada, Inc.

*Messana Rosner & Stern* and *Thomas M. Messana* and *David N. Stern*, Fort Lauderdale, Florida, for Respondents QTS Logistics, Inc.; and Quality Transportation Services of Nevada, Inc.

*Michael R. Mushkin & Associates, P.C.*, and *Michael R. Mushkin*, Las Vegas, for Respondent Illuminating Concepts, Ltd.

*Harold W. Mitts, Jr.*, Overland Park, Kansas, for Respondent Pahor Mechanical Contractors, Inc.

*Muije & Varricchio* and *Phillip T. Varricchio*, Las Vegas, for Respondent Anixter Inc.

*Ozark Perron & Nelson, P.A.*, and *Andre R. Perron*, Bradenton, Florida; *Adam M. Shonson*, Miami, Florida, for Respondent The Sherwin-Williams Company.

*Palumbo Bergstrom* and *Erik D. Buzzard*, Irvine, California, for Respondent Winter Composites, LLC.

*Jimmy D. Parrish*, Orlando, Florida, for Respondents Coreslab Structures (L.A.) Inc.; and Keenan, Hopkins, Suder & Stowell Contractors, Inc.

*Pezzillo Lloyd* and *Brian J. Pezzillo* and *Jennifer R. Robinson*, Las Vegas, for Respondents Cashman Equipment Company; Communications Supply Corporation; Derr and Gruenewald Construction Co.; Graybar Electric Company, Inc.; H&E Equipment Services, Inc.; Hilti, Inc.; Quality Cabinet and Fixture Company; Tracy & Ryder Landscape, Inc.; W.R. Grace & Co.-Conn.; and Zetian Systems, Inc.

*Robert F. Reynolds*, Fort Lauderdale, Florida, for Respondents American Crane & Hoist Erectors, LLC; and Republic Crane, LLC.

*D. Jean Ryan*, Miami, Florida, for Respondent Tractel, Inc.

*Beverly J. Salhanick*, Las Vegas, for Respondent Reliable Steel, Inc.

*Shraiberg Ferrara & Landau, PA*, and *Philip J. Landau*, Boca Raton, Florida, for Respondents Allegheny Millwork PBT; Architectural Materials Inc.; Bergman, Walls, & Associates, Ltd.—Architects; Dana Kepner Company, Inc.; Desert Lumber LLC; Dielco Crane Service, Inc.; Door & Hardware Management, Inc.; Door-Ko, Inc.; Eagle Enterprises of TN, LLC; George M. Raymond Co.; Henri Specialties Co., Inc., of Nevada; J.B.A. Consulting Engineers, Inc.; Johnson Controls, Inc.; L&P Interiors, LLC; Lochsa, LLC; ThyssenKrupp Safway, Inc.; TMCX Nevada, LLC; and YWS Architects, LLC.

*Wright, Fulford, Moorhead & Brown, P.A.*, and *Edward M. Baird*, Altamonte Springs, Florida, for Respondent Insulpro Projects, Inc.

*A Company Portable Restrooms, Inc.; A Track-Out Solution LLC; Abatix Environmental Corp.; Absolute Metals, LLC; Air Systems, Inc.; AK Constructors, Inc.; Alabama Metal Industries Corporation; Allen Drilling Inc.; Alpine Steel LLC; American Air Balance Co., Inc.; American Metal Fabricators LLC; American Pacific Excavation Inc.; American Sand & Gravel, Ltd.; Apex Concrete Cutting and Coring, Inc.; Arcelormittal International America, LLC; Arcon Flooring, Inc.; Arizona Tile, LLC; Atlas Construction Cleanup Inc.; Atlas Construction Supply, Inc.; AZ-PUS, Inc.; Aztech Inspection Services, LLC; Bakersfield Pipe and Supply, Inc.; Besam U.S., Inc.; Besam West, Inc.; Boething Treeland Farms, Inc.; Brown-Strauss Steel Sales, Inc.; Burke Engineering Co.; C.R. Laurence Co., Inc.; California Flex Corporation; California Wholesale Material Supply, LLC; Carrara Marble Company of America; CECO Concrete Construction, LLC; Cellcrete Corporation; Cherokee Erecting Company, LLC; City Electric Supply Company; Clark County Fence Company, LLC; CLQTS, LLC; CMC Group, LLC; Codale Electric Supply, Inc.; Commercial Scaffolding of Nevada, Inc.; Concrete Coring of Nevada, Inc.; Construction Sealants Supply, Inc.; Consumers Pipe and Supply Co.; Continental Glass & Hardware, Inc.; Copper State Bolt & Nut Company, Inc.; Cummins Rocky Mountain, LLC; Curtis Steel Co., Inc.; CWCI Insulation of Nevada Inc.; D&D Steel, Inc.; Dal-Tile Corporation; Design Space Modular Buildings, Inc.; Direct Paving & Grading; Direct Paving & Grading, LLC; Diversified Concrete Cutting, Inc.; Diversified Construction Supply, LLC; DSE Construction, Inc.; Dunn-Edwards Corporation; East Iowa Decks Support, Inc.; Eggers Industries, Inc.; Elmco/Ford, Inc.; EM&C Trucking, LLC; Embassy Glass; Embassy Steel; Energy Products of Nevada, Inc.; Engineered Eq. & Systems Co.; Raul Escobedo; F. Rodgers Corporation; Fasteners Inc. Southwestern Supply; Ferguson Enterprises, Inc.; Ramon Fernandez, as Administrator of the Estate of Ana Fernandez; FF&E Purchasing Associates, LLC; Flippin's Trenching, LLP; Fountain Supply Company; Frehner Construction Company, Inc.; Garrett Materials, LLC; General Supply & Services, Inc.; Gillette Construction, LLC; Global Services of Nevada, Inc.; Grani Installation Inc.; Halton Co.; Hammond Caulking, Inc.; Hampton Tedder Electric Company; Hampton Tedder Technical Services; Harrington Industrial Plastics, LLC; Harsco Corporation; HD Supply Construction Supply, LP; HD Supply Waterworks, LP; Heating and Cooling Supply, Inc.; Helou & Sons, Inc.; Hershberger Bros. Welding, Inc.; Hertz Equipment*

*Rental Corporation*; *Hotz, LLC*; *IBA Consultants West, LLC*; *Ideal Mechanical, Inc.*; *Insulfoam LLC*; *Intermountain Lock & Supply Co.*; *J&J Enterprises Services, Inc.*; *Janis Services West, LLC*; *Jensen Enterprises, Inc.*; *K&K Construction Supply, Inc.*; *Kelly's Pipe & Supply Co., Inc.*; *Knorr Systems, Inc.*; *L&W Supply Corporation*; *Langan Engineering & Environmental Services, Inc.*; *Las Vegas Awnings, LLC*; *Las Vegas Paving Corporation*; *Las Vegas Roofing Supply, LLC*; *Las Vegas Windustrial Co.*; *Lewis Crane & Hoist, LLC*; *Lone Mountain Excavation & Utilities, LLC*; *Lukz Trucking, Inc.*; *M&H Building Specialties, Inc.*; *Mac Arthur Co.*; *Mechanical Products Nevada, Inc.*; *Mechanical Systems West, Inc.*; *Merli Concrete Pumping of Nevada, Inc.*; *Metal-Weld Specialties, Inc.*; *Mighty Crane Service, LLC*; *Mitchell Construction Services, Inc.*; *Mundee Trucking, Inc.*; *Nedco Supply*; *NES Rentals Holdings, Inc.*; *Nevada Construction Clean-Up*; *Nevada Ready Mix Corporation*; *Norman S. Wright Mechanical Equipment Corporation*; *Oldcastle Glass, Inc.*; *Olson Precast Company*; *Oreco Duct Systems, Inc.*; *Ossis Iron Works*; *P&S Metals*; *Pacific Insulation Company*; *Pacific Stair Co.*; *Papé Material Handling, Inc.*; *Par Electrical Contractors, Inc.*; *Paramount Scaffold, Inc.*; *Partition Specialties, Inc.*; *Paul Bebble & Associates, Inc.*; *PDM Steel Service Centers, Inc.*; *Potter Roemer*; *Premier Steel, Inc.*; *Primary Steel, Inc.*; *Prime Contracting, Inc.*; *Prime Fabrication & Supply*; *QED, Inc.*; *Quick Crete Products Corp.*; *RC White Consulting, Inc.*; *Ready Mix, Inc.*; *Red Mountain Machinery Company*; *RJF International Corp.*; *Roadsafe Traffic Systems, Inc.*; *Rockway Precast, Inc.*; *Roncelli, Inc.*; *RSC Equipment Rental, Inc.*; *Safeworks LLC*; *SC Steel, Inc.*; *Silverado Associates, LLC*; *Smalley & Company*; *Smith Pipe & Steel Company*; *SMK, Inc.*; *Southwest Iron Works, LLC*; *Squires Lumber Company*; *Starlite Construction, Inc.*; *Steel Engineers, Inc.*; *Steel Structures, Inc.*; *Sterling Corporate Custom Elevator Interiors*; *Stetson Electric, Inc.*; *Stinger Welding, Inc.*; *Striping Solutions, Inc.*; *Summit Excavation, Inc.*; *Summit Sand & Gravel, Inc.*; *Sunbelt Rentals, Inc.*; *Sunstate Equipment Co., LLC*; *Syracuse Castings West Corp.*; *T. Nickolas Co.*; *The Glidden Company*; *The Southwest Circle Group, Inc.*; *The Winroc Corporation (Nevada)*; *Thyssen Elevator Corporation*; *Tomarco Contractor Specialties, Inc.*; *Totten Tubes, Inc.*; *Trench Plate Rental Co.*; *Tri-Power Group, Inc.*; *Ulma Form-Works, Inc.*; *United Rentals Gulf, LLC*; *United Rentals Northwest, Inc.*; *Ventura Marble, LLC*; *VFC, Inc.*; *Walnut Investment Co., LLC*; *Ward & Howes Associates, Ltd.*; *Washout Systems, LLC*; *White Cap Construction Supply, Inc.*; and *Williams Furnace Co.*, in Proper Person.

*Jones Vargas* and *John P. Sande, III, John P. Desmond*, and *John P. Sande, IV*, Reno, for Amicus Curiae Nevada Bankers Association.

*Snell & Wilmer LLP* and *Leon F. Mead, II, Laura Ellen Browning, Marek P. Bute*, and *Kelly H. Dove*, Las Vegas, for Amici Curiae Associated General Contractors, Las Vegas Chapter; Nevada Association of Mechanical Contractors; and Nevada Chapter of the Associated General Contractors.

*Taggart & Taggart, Ltd.*, and *Paul G. Taggart*, Carson City, for Amicus Curiae Nevada Land Title Association.

## OPINION

By the Court, CHERRY, C.J.:

The United States Bankruptcy Court for the Southern District of Florida has certified three questions to this court relating to the viability of equitable subrogation and the enforceability of contractual subordination against mechanic's lien claimants under Nevada's mechanic's and materialman's lien statutes, codified in NRS Chapter 108.[2] While we decline to answer the first question,

[2]The three certified questions were presented to us as follows:

    1.  Whether the Senior Lenders' mortgage is senior to the mechanics' liens by virtue of the legal doctrine of equitable subrogation and/or loan replacement and modification, inasmuch as loan proceeds secured by Bank of America, as administrative agent for the Senior Lenders, were

we entertain questions two and three because the answers may be determinative of part of the federal case, there is no controlling Nevada precedent, and the answers will help settle important questions of law. *See* NRAP 5; *Volvo Cars of North America v. Ricci,* 122 Nev. 746, 750-51, 137 P.3d 1161, 1164 (2006).

The second question focuses on whether the doctrine of equitable subrogation may be applied against mechanic's lien claimants, such that a mortgage incurred after the commencement of work on a project will succeed to the senior priority position of a preexisting lien satisfied by the mortgagee, despite the existence of intervening mechanics' liens. Although this court has adopted mortgage subrogation principles, *see American Sterling Bank v. Johnny Mgmt. LV,* 126 Nev. 423, 245 P.3d 535 (2010); *Houston v. Bank of America,* 119 Nev. 485, 488, 78 P.3d 71, 73 (2003); *see also* Restatement (Third) of Prop.: Mortgages § 7.6 cmt. a (1997), we have never addressed whether equitable subrogation applies in the mechanic's lien context. NRS 108.225 is the controlling authority in Nevada regarding the priority of mechanics' liens. It expressly provides that every other mortgage or encumbrance imposed after the commencement of construction of a work of improvement is subordinate and subject to the mechanics' liens regardless of the recording dates of the notices of liens. Because principles of equity cannot trump an express statutory provision, we conclude that equitable subrogation does not apply against mechanic's lien claimants.

The third question asks this court to determine whether contractual subordination agreements executed by mechanic's lien claimants are enforceable. Pursuant to NRS 108.2453 and NRS 108.2457, we conclude that subordination agreements purporting to subordinate mechanics' liens prospectively are not enforceable. However, mechanic's lien claimants may waive their statutorily protected rights when the precise requirements of NRS 108.2457 are met.

---

used to completely satisfy a senior mortgage which was rerecorded prior to the commencement of any work on the Project, with the expectation that the new loan would be secured by a lien with the same priority as the loan being satisfied?

2. Whether NRS [Chapter 108] prohibits the use of equitable subrogation as found in the Restatement [(Third)] of [Prop.:] Mortgages § 7.6, or the use of replacement and modification as found in the Restatement [(Third)] of [Prop.:] Mortgages § 7.3, to allow a mortgage to "step into the shoes of" a pre-existing lien (which was fully satisfied by the mortgagee) when such pre-existing lien was recorded prior to the commencement of any work or improvement giving rise to a statutory lien under NRS [Chapter 108]?

3. Whether subordination agreements executed by certain mechanics and materialman lien claimants, purporting to subordinate their liens to a new mortgage, are enforceable?

## FACTS AND PROCEDURAL HISTORY

This court's review is limited to the facts provided by the certification order from the United States District Court for the Southern District of Florida and the complaint attached thereto, and we answer the questions of law posed to us based on those facts. *In re Fontainebleau Las Vegas Holdings*, 127 Nev. 941, 955, 267 P.3d 786, 795 (2011).

Debtor Fontainebleau Las Vegas Holdings, LLC, sought to construct and develop a $2.8 billion hotel-casino resort with gaming, lodging, convention, and entertainment amenities in Las Vegas, Nevada (the Project).[3] In 2005, Bank of America, N.A., in its capacity as an administrative agent for a syndicate of prepetition lenders, loaned Fontainebleau $150 million secured by a deed of trust in first priority position. Over 300 contractors and suppliers started construction on the Project, some of whom later asserted statutory mechanics' liens against the property. In 2007, Fontainebleau sought construction financing for the Project, and Bank of America, as agent, agreed to loan Fontainebleau $1.85 billion, to be dispersed in three stages. As partial security for the loan, Fontainebleau agreed to execute a deed of trust in favor of Bank of America to be recorded in first priority position. The 2007 credit agreement included a provision requiring the general contractor and subcontractors to subordinate their liens to the Bank of America deed of trust. Construction proceeded for a time, but at some point it appears that Bank of America refused to advance further funds under the existing loan commitments.[4] Work ceased, and Fontainebleau filed a petition for relief under Chapter 11 of the bankruptcy code in the United States District Court for the Southern District of Florida. Eventually, the property was sold, with the liens to attach to the proceeds, and the Chapter 11 reorganization proceeding was converted to a Chapter 7 liquidation.[5]

Appellant Wilmington Trust FSB succeeded Bank of America as administrative agent for the lenders. In 2009, Wilmington Trust filed an adversary proceeding in the bankruptcy court against re-

---

[3]The Project is situated on approximately 24.4 acres at the sites of the former El Rancho Hotel and Algiers Hotel on the north end of the Las Vegas Strip. The Project is approximately 70 percent complete.

[4]The parties to the loan commitments are currently in litigation in the United States District Court for the Southern District of Florida in a proceeding unrelated to the adversary proceeding in which the certified questions arise.

[5]Fontainebleau sold substantially all of its assets to Icahn Nevada Gaming Acquisition, LLC. The sale was approved by the United States District Court for the Southern District of Florida in January 2010. The following month, Fontainebleau closed the sale transaction with Icahn, transferring its assets free and clear of all liens and encumbrances, with all liens and encumbrances from the Project attaching to the sale proceeds.

spondents, a multitude of contractors, subcontractors, and suppliers that have asserted statutory mechanics' liens against the property. The dispute between Wilmington Trust and the various contractors and suppliers over the priority of their respective liens on the property is at the center of the bankruptcy court's certified questions. In particular, the bankruptcy court has sought a ruling from this court regarding the application of equitable subrogation and contractual subordination in the context of the mechanics' liens. The bankruptcy court entered an order staying the proceedings until resolution of the certified questions by this court.[6]

## DISCUSSION

The decision to consider certified questions is within this court's discretion. *See* NRAP 5(a) (stating that this court *may* answer certified questions). In determining whether to exercise its discretion to consider certified questions, this court looks to whether the "answers may 'be determinative' of part of the federal case, there is no controlling [Nevada] precedent, and the answer will help settle important questions of law." *Volvo Cars of North America v. Ricci*, 122 Nev. 746, 750-51, 137 P.3d 1161, 1164 (2006) (quoting *Ventura Group v. Ventura Port Dist.*, 16 P.3d 717, 719 (Cal. 2001)). This court is also constrained " 'to resolving legal issues presented in the parties' pleadings.' " *Orion Portfolio Servs. 2 v. Clark County*, 126 Nev. 397, 401, 245 P.3d 527, 530 (2010) (quoting *Terracon Consultants v. Mandalay Resort*, 125 Nev. 66, 72, 206 P.3d 81, 85 (2009)).

Because the first question presented by the district court is largely factual and the discovery process is in its infancy, we decline to answer it, except to the extent that its answer is implicated in the answer to question two. *See Badillo v. American Brands, Inc.*, 117 Nev. 34, 38, 16 P.3d 435, 437 (2001) (declining to answer a certified question).[7] However, the remaining questions posed by the bankruptcy court squarely fit within the *Volvo* criteria. We conclude that our consideration of questions two and three is appropriate. We streamline questions two and three in order to

---

[6]The Las Vegas Chapter of the Associated General Contractors, the Nevada Chapter of the Associated General Contractors, and the Nevada Association of Mechanical Contractors filed an amici brief supporting respondents. The Nevada Bankers Association and the Nevada Land Title Association filed amicus briefs supporting Wilmington Trust.

[7]We also decline to address whether this court should adopt Restatement (Third) of Prop.: Mortgages § 7.3 (1997).

best resolve the legal issues presented. *See Boorman v. Nevada Mem'l Cremation Society*, 126 Nev. 301, 304, 236 P.3d 4, 6 (2010) (rephrasing certified questions under NRAP 5). Both questions present issues of law that we review de novo. *American Sterling Bank v. Johnny Mgmt. LV*, 126 Nev. 423, 428, 245 P.3d 535, 538 (2010); *Southern Nev. Homebuilders v. Clark County*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005).

*Do Nevada's mechanic's and materialman's lien statutes prohibit the use of equitable subrogation?*

The second question concerns whether the doctrine of equitable subrogation can apply to allow a subsequent lender to claim the senior priority status of an original loan that the subsequent lender satisfied when contractors and suppliers hold intervening mechanics' liens.

We have previously applied equitable subrogation in the realm of mortgages in *Houston v. Bank of America*, 119 Nev. 485, 488, 78 P.3d 71, 73 (2003).[8] In *Houston*, we recognized that the doctrine of equitable subrogation "permits 'a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance.' " *Id*. (quoting *Mort v. U.S.*, 86 F.3d 890, 893 (9th Cir. 1996)). In other words, the doctrine "enables 'a later-filed lienholder to leap-frog over an intervening lien[holder].' " *American Sterling Bank v. Johnny Mgmt. LV*, 126 Nev. 423, 429, 245 P.3d 535, 539 (2010) (alteration in original) (quoting *Hicks v. Londre*, 125 P.3d 452, 456 (Colo. 2005)); *see* Grant S. Nelson & Dale A. Whitman, *Adopting Restatement Mortgage Subrogation Principles: Saving Billions of Dollars for Refinancing Homeowners*, 2006 BYU L. Rev. 305, 305 n.2 (2006) (lien priority is critical due to the risk "that the foreclosure proceeds will be insufficient to pay the [lien] in full"). "The practical effect of equitable subrogation is a revival of the discharged lien and underlying obligation and assignment to the payor or subrogee, permitting the subrogee to enforce the seniority of the satisfied lien against junior lienors." *American Sterling*, 126 Nev. at 429, 245 P.3d at 539. Although equitable subrogation has the effect of an assignment of the discharged lien, it is not an absolute right and will not be granted if it will result in injustice or preju-

---

[8]This court has recognized the doctrine of equitable subrogation in a variety of situations. *See, e.g.*, *AT&T Technologies, Inc. v. Reid*, 109 Nev. 592, 855 P.2d 533 (1993) (workers' compensation); *Federal Ins. Co. v. Toiyabe Supply*, 82 Nev. 14, 409 P.2d 623 (1966) (negotiable instruments); *Globe Indem. v. Peterson-McCaslin*, 72 Nev. 282, 303 P.2d 414 (1956) (surety); *Laffranchini v. Clark*, 39 Nev. 48, 153 P. 250 (1915) (mortgages).

dice to an intervening lienor. *Houston*, 119 Nev. at 491, 78 P.3d at 75. After considering multiple approaches in applying the doctrine, we adopted the position taken by the Restatement (Third) of Property: Mortgages, whereby

> a mortgagee will be subrogated when it pays the entire loan of another as long as the mortgagee ''was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.''

*Id.* at 490, 78 P.3d at 74 (quoting Restatement (Third) of Prop.: Mortgages § 7.6(a)(4) (1997)); *see* Nelson & Whitman, *Real Estate Finance Law* § 10.6, at 27 (5th ed. 2007).

While we have previously applied equitable subrogation principles, we have not addressed whether the doctrine displaces the priority plainly and specifically afforded to mechanic's lien claimants in NRS 108.225. *See Skyrme v. Occidental Mill and Mining Co.*, 8 Nev. 219, 232 (1873) (''a mechanic's lien is different from a mortgage executed by the consent of the parties''). In resolving the novel question presented to us by the bankruptcy court, we will independently review whether equitable subrogation applies under the framework of mechanics' liens. *American Sterling*, 126 Nev. at 428, 245 P.3d at 538; *see Hicks*, 125 P.3d at 455. Before we resolve whether the doctrine applies under the circumstances presented in this case, we will examine the purpose and history of mechanics' liens.

A mechanic's lien is a statutory creature established to help ensure payment for work or materials provided for construction or improvements on land. *Lehrer McGovern Bovis v. Bullock Insulation*, 124 Nev. 1102, 1115, 197 P.3d 1032, 1041 (2008); *see Van Stone v. Stillwell & Bierce Mfg. Co.*, 142 U.S. 128, 136 (1891); *California Commercial v. Amedeo Vegas I*, 119 Nev. 143, 146, 67 P.3d 328, 331 (2003); *Brunzell v. Lawyers Title*, 101 Nev. 395, 396-97, 705 P.2d 642, 644 (1985); *Schofield v. Copeland Lumber*, 101 Nev. 83, 84, 692 P.2d 519, 520 (1985); *see also Black's Law Dictionary* 1008 (9th ed. 2009) (defining a mechanic's lien as ''[a] statutory lien that secures payment for labor or materials supplied in improving, repairing, or maintaining real or personal property, such as a building, an automobile, or the like''). We have previously held '' 'that the mechanic's lien statutes are remedial in character and should be liberally construed.' '' *Lehrer McGovern*, 124 Nev. at 1115, 197 P.3d at 1041 (quoting *Las Vegas Plywood v. D & D Enterprises*, 98 Nev. 378, 380, 649 P.2d 1367, 1368 (1982)); *see Hardy Companies, Inc. v. SNMARK, LLC*, 126 Nev.

528, 536, 245 P.3d 1149, 1155 (2010); *Peccole v. Luce & Good-fellow*, 66 Nev. 360, 373, 212 P.2d 718, 725 (1949); *Lamb v. Lucky Boy M. Co.*, 37 Nev. 9, 16, 138 P. 902, 904 (1914); *Malter v. Falcon M. Co.*, 18 Nev. 209, 212, 2 P. 50, 50 (1883). Legislators have created a means to provide contractors secured payment for their work and materials—"contractors are generally in a vulnerable position because they extend large blocks of credit; invest significant time, labor, and materials into a project; and have any number of workers vitally depend upon them for eventual payment." *Lehrer McGovern*, 124 Nev. at 1116, 197 P.3d at 1041 (citing *Connolly Develop., Inc. v. Sup. Ct. of Merced Cty.*, 553 P.2d 637, 653 (Cal. 1976)); *see Ferro v. Bargo M. Co.*, 37 Nev. 139, 141, 140 P. 527, 528 (1914).

The concept of a mechanic's lien originated in ancient Roman law. Edward H. Cushman, *The Proposed Uniform Mechanics' Lien Law*, 80 U. Pa. L. Rev. 1083, 1083 (1932). It was later embraced in France by the Code Napoleon and in other countries that have adopted civil law as the basis of their jurisprudence, including Belgium and Spain. *Moore-Mansfield Const. Co. v. Indianapolis, N. C. & T. Ry. Co.*, 101 N.E. 296, 301 (Ind. 1913); Samuel L. Phillips, *A Treatise on the Law of Mechanics' Liens on Real and Personal Property* 9-10 (2d ed. 1883). The first mechanic's lien law in America involving real property was enacted by Maryland in 1791.[9] *Frederick Contractors, Inc. v. Bel Pre Med. Ctr., Inc.*, 334 A.2d 526, 530 (Md. 1975). *Blose v. Havre Oil & Gas Co.*, 31 P.2d 738, 741 (Mont. 1934); *Key Agency v. Continental Cas. Co.*, 155 A.2d 547, 551 (N.J. 1959). Enacted upon the urging of Thomas Jefferson and James Madison, the goal of the law was to enable the swift construction of our nation's new capitol in the District of Columbia by protecting the interests of "bricklayers, carpenters, joiners, or other workingmen." *Monroe & Co. v. Hannan*, 18 D.C. (7 Mackey) 197 (1889); *see Morris v. United States*, 174 U.S. 196, 301 (1899) (White, J., dissenting); *Premier Investments v. Suites of America*, 644 N.E.2d 124, 127 n.1 (Ind. 1994); *Fleming-Gilchrist Const. Co. v. McGonigle*, 89 S.W.2d 15, 19 (Mo. 1935); *Boyle v. Mountain Key Min. Co.*, 50 P. 347, 352-53 (N.M. 1897). Today, all 50 states have promulgated mechanic's lien statutes. *Independent Trust v. Stan Miller, Inc.*, 796 P.2d 483, 487 (Colo. 1990); *Frank H. Conner Co. v. Spanish Inns Charlotte N.C.*, 242 S.E.2d 785, 791 (N.C. 1978); *Nesdahl Surveying & Eng. v. Ackerland*, 507 N.W.2d 686, 690 (N.D. 1993); *see* Thomas Warner Smith, III, Note, *Mechanic's Lien Priority Rights for Design Professionals*, 46 Wash. & Lee L. Rev. 1035, 1038 (1989).

---

[9]There is some indication that Pennsylvania implemented a mechanic's lien law relating to shipbuilders in 1784. *Neil v. Kinney*, 11 Ohio St. 58, 66 (Ohio 1860).

Prior to statehood, the Legislative Assembly of the Territory of Nevada passed this state's first mechanic's lien law in 1861. 1861 Laws of the Territory of Nevada, ch. 16, at 35; *see Skyrme v. Occidental Mill and Mining Co.*, 8 Nev. 219, 228 (1873); *Hunter v. Savage Mining Co.*, 4 Nev. 153, 155 (1868).[10] As a "product of legislative fiat" in derogation of common law, *Fisher Bros., Inc. v. Harrah Realty Co.*, 92 Nev. 65, 67, 545 P.2d 203, 204 (1976), "Nevada's mechanic[']s lien law is unique in the United States," because it has been "almost entirely derived by work of the Nevada state legislature."[11] Leon F. Mead II, *Nevada Construction Law* § 8.1 (2010).[12] In 2003 and 2005, in response to the Venetian lien litigation, *see Venetian Casino Resort v. Dist. Ct.*, 118 Nev. 124, 41 P.3d 327 (2002), the Legislature substantially revised the mechanic's lien statutes with the intent "to facilitate payments to lien claimants." *Hardy Companies, Inc. v. SNMARK, LLC*, 126 Nev. 528, 538, 245 P.3d 1149, 1156 (2010); Mead II, *supra*, at § 8.1; *see* Hearing on S.B. 343 Before the Assembly Judiciary Comm., 73d Leg. (Nev., May 13, 2005) (mechanics' liens "assist people who have improved real property so that they can get paid for their efforts").

NRS 108.225 is the controlling authority in Nevada regarding the priority of mechanics' liens. Amended in 2003, NRS 108.225 affirmatively gives mechanic's lien claimants priority over all other liens, mortgages, and encumbrances that attach *after* the commencement of a work of improvement:

> 1. [Mechanics'] liens . . . are preferred to:
> (a) Any lien, mortgage or other encumbrance which may have attached to the property after the commencement of construction of a work of improvement.

---

[10]Other western states, including Idaho, Montana, Oregon, Utah, and Wyoming, also enacted similar mechanic's lien legislation before being recognized as states. *In re GVR Ltd. Co., Inc.*, 695 P.2d 1240, 1241 (Idaho 1985); *Merrigan v. English*, 22 P. 454, 456 (Mont. 1889); *Auld v. Starbard*, 173 P. 664, 666 (Or. 1918); *Doane v. Clinton*, 2 Utah 417, 419 (1877); *Weyerhaeuser Co. v. Walters*, 707 P.2d 733, 739 (Wyo. 1985) (Rose, J., dissenting).

[11]Although Nevada's mechanic's lien statutes have been extensively revised since 1861, they were originally "borrowed from California." *Hunter v. Truckee Lodge*, 14 Nev. 24, 26 (1879).

[12]"Promulgation of a uniform mechanics' lien act was first attempted in 1925 and resulted in the Uniform Mechanics' Lien Law." Sara E. Dysart, Comment, *USLTA: Article 5 "Construction Liens" Analyzed in Light of Current Texas Law on Mechanics' and Materialmen's Liens*, 12 St. Mary's L.J. 113, 116 n.17 (1980). However, only one state—Florida—adopted it. *Geiser v. Permacrete, Inc.*, 90 So. 2d 610, 612 (Fla. 1956).

(b) Any lien, mortgage or other encumbrance of which the lien claimant had no notice and which was unrecorded against the property at the commencement of construction of a work of improvement.

2. Every mortgage or encumbrance imposed upon, or conveyance made of, property affected by [mechanics'] liens . . . after the commencement of construction of a work of improvement are subordinate and subject to the [mechanics'] liens . . . regardless of the date of recording the notices of liens.

Despite the plain and unambiguous language of the statute, Wilmington Trust requests that this court apply equitable subrogation, as it did in *Houston v. Bank of America*, 119 Nev. 485, 488, 78 P.3d 71, 73 (2003), in the mechanic's lien context.[13] *See MGM Mirage v. Nevada Ins. Guaranty Ass'n*, 125 Nev. 223, 228-29, 209 P.3d 766, 769 (2009) ("when the language of a statute is plain and unambiguous, such that it is capable of only one meaning, this court should not construe that statute otherwise"). Nearly 100 years ago, we recognized in *Lamb v. Lucky Boy M. Co.*, 37 Nev. 9, 16, 138 P. 902, 904 (1914), that mechanics' liens "ha[ve] no place in equity jurisprudence." Moreover, "[w]e have recognized

---

[13]Wilmington Trust and amici Nevada Bankers Association and Nevada Land Title Association assert that this court should follow other jurisdictions that employ equitable subrogation in the realm of mechanics' liens. *See Lamb Excavation v. Chase Manhattan Mortg.*, 95 P.3d 542, 543-46 (Ariz. Ct. App. 2004); *Peterman-Donnelly Eng. & Con. Corp. v. First Nat. Bank*, 408 P.2d 841, 846 (Ariz. Ct. App. 1965); *Parker v. Tout*, 279 P. 431, 432 (Cal. 1929); *Detroit Steel Products Co. v. Hudes*, 151 N.E.2d 136, 139 (Ill. App. Ct. 1958); *Houston Lumber Co. v. Skaggs*, 613 P.2d 416, 417-18 (N.M. 1980); *Rock River Lumber v. Universal Mortg. Etc.*, 262 N.W.2d 114, 119-20 (Wis. 1978); *Bank of Baraboo v. Prothero*, 255 N.W. 126, 128 (Wis. 1934). "However, every state seems to have a different version of the law with different requirements, different affected parties, and different beneficiaries." Ethan Glass, *Old Statutes Never Die . . . Nor Do They Fade Away: A Proposal for Modernizing Mechanics' Lien Law by Federal Action*, 27 Ohio N.U. L. Rev. 67, 96 (2000). Because of the diversity of mechanic's lien laws across the country, caselaw from other states "should be approached with caution." *Independent Trust v. Stan Miller, Inc.*, 796 P.2d 483, 487 (Colo. 1990); *see Nickel Mine Brook v. Joseph E. Sakal*, 585 A.2d 1210, 1213 (Conn. 1991); *Woolridge v. Torgrimson*, 229 N.W. 805, 805 (N.D. 1930). Having considered our statutory scheme and the purpose behind our mechanic's lien statutes, we decline to adopt the cases from other jurisdictions that apply equitable subrogation in circumstances surrounding mechanics' liens because our lien laws are exclusive to this state. Unlike the apparent trend in other courts, we are not persuaded that equitable power contravenes express statutory language. Furthermore, Wilmington Trust had ample means to minimize its financial risk through the proper channels of contractual subordination. *See Ex Parte Lawson*, 6 So. 3d 7, 15-16 (Ala. 2008).

that . . . equitable principles will not justify a court's disregard of statutory requirements." *Pellegrini v. State*, 117 Nev. 860, 878, 34 P.3d 519, 531 (2001); *see Blaine Equip. Co. v. State, Purchasing Div.*, 122 Nev. 860, 867-68, 138 P.3d 820, 824-25 (2006); *Mello v. Woodhouse*, 110 Nev. 366, 373, 872 P.2d 337, 341 (1994); *Smith v. Smith*, 68 Nev. 10, 23, 226 P.2d 279, 285 (1951). The Legislature has spoken and has created a specific statutory scheme whereby a mechanic's lien is afforded priority over a subsequent lien, mortgage, or encumbrance in order to safeguard payment for work and materials provided for construction or improvements on land. *Lehrer McGovern Bovis v. Bullock Insulation*, 124 Nev. 1102, 1115, 197 P.3d 1032, 1041 (2008); *see Ex Parte Lawson*, 6 So. 3d 7, 15 (Ala. 2008). Therefore, we conclude that the plain and unambiguous language of NRS 108.225 precludes application of the doctrine of equitable subrogation, as it unequivocally places mechanic's lien claimants in an unassailable priority position. *See Beazer Homes Nevada, Inc. v. Dist. Ct.*, 120 Nev. 575, 578 n.4, 97 P.3d 1132, 1134 n.4 (2004) ("When a statute is clear, unambiguous, not in conflict with other statutes and is constitutional, the judicial branch may not refuse to enforce the statute on public policy grounds. That decision is within the sole purview of the legislative branch."); *Freeman v. Davidson*, 105 Nev. 13, 16, 768 P.2d 885, 887 (1989) ("The legislature's intent should be given full effect."). This position "accords with Nevada's policy favoring contractors' rights to secured payment for labor, materials, and equipment furnished." *Lehrer McGovern*, 124 Nev. at 1116, 197 P.3d at 1041.

*Are subordination agreements executed by mechanic's lien claimants enforceable?*

The third question asks us to determine whether contractual subordination agreements defining or altering the rights and priorities of creditors' liens are enforceable when they are executed by mechanic's lien claimants. We conclude that subordination agreements that purport to subordinate the liens prospectively are unenforceable but that non-prospective subordination may be pursued through compliance with the requirements of NRS 108.2457. Accordingly, in appropriate circumstances, contracts can be structured to achieve subordination.

Our decision is guided by the statutory scheme. NRS 108.2453(1) provides that "[e]xcept as otherwise provided in NRS 108.221 to 108.246, inclusive, a person may not waive or modify a right, obligation or liability set forth in the provisions of NRS 108.221 to 108.246, inclusive." *See also* NRS 108.2453(2)(a) ("A condition, stipulation or provision in a contract or other agreement for the improvement of property or for the construction, alteration

or repair of a work of improvement in this State that attempts to do any of the following is contrary to public policy and is void and unenforceable: (a) Require a lien claimant to waive rights provided by law to lien claimants or to limit the rights provided to lien claimants, other than as expressly provided in NRS 108.221 to 108.246, inclusive.''). NRS 108.2457(5)(a)-(d) specifies, in relevant part, that

> 5. The waiver and release given by any lien claimant is unenforceable unless it is in the following forms in the following circumstances:
>
> (a) Where the lien claimant is required to execute a waiver and release in exchange for or to induce the payment of a progress billing and the lien claimant is not in fact paid in exchange for the waiver and release or a single payee check or joint payee check is given in exchange for the waiver and release, . . . .
>
> (b) Where the lien claimant has been paid in full or a part of the amount provided for in the progress billing, . . . .
>
> (c) Where the lien claimant is required to execute a waiver and release in exchange for or to induce payment of a final billing and the lien claimant is not paid in exchange for the waiver and release or a single payee check or joint payee check is given in exchange for the waiver and release, . . . .
>
> (d) Where the lien claimant has been paid the final billing. . . .

*See also* NRS 108.2457(1) (allowing for lien waivers only when the lien claimant: ''(a) Executes and delivers a waiver and release that is signed by the lien claimant or the lien claimant's authorized agent in the form set forth in this section; and (b) In the case of a conditional waiver and release, receives payment of the amount identified in the conditional waiver and release.'').

Concerning the interplay between NRS 108.2453 and NRS 108.2457, the parties take divergent positions. Wilmington Trust contends that the Legislature, by failing to explicitly proscribe subordination, did not intend to prevent lenders from seeking to protect their interest through subordination. It asserts that subordination agreements executed by mechanic's lien claimants that purport to subordinate their liens to a new mortgage are enforceable when they are not prospective. Respondents argue that NRS 108.2453 and NRS 108.2457 unambiguously prohibit the enforcement of contractual provisions requiring lien claimants to subordinate their interests to others, including lenders. Because these

statutes are " 'capable of being understood in two or more senses by reasonably informed persons,' " they are ambiguous. *Estate of LoMastro v. American Family Ins.*, 124 Nev. 1060, 1073, 195 P.3d 339, 348 (2008) (quoting *McKay v. Bd. of Supervisors*, 102 Nev. 644, 649, 730 P.2d 438, 442 (1986)); *see also Hardy Companies, Inc. v. SNMARK, LLC*, 126 Nev. 528, 535, 245 P.3d 1149, 1154 (2010) (concluding that NRS 108.2453(1) is ambiguous).

Whether the statutes provide for prospective waivers is not clear from the plain language of the statutes; thus, we must look to the legislative history. Ambiguous statutes are interpreted in accordance with the Legislature's intent. *Hardy*, 126 Nev. at 533, 245 P.3d at 1154. The legislative history behind the enactments of NRS 108.2453 and NRS 108.2457[14] illuminates the Legislature's intent that prospective waivers of mechanics' liens are unenforceable. *See* Hearing on S.B. 206 Before the Senate Judiciary Comm., 72d Leg. (Nev., March 11, 2003) ("The purpose of this bill is to prohibit the prospective waiver of a lien claimant's rights, and to confirm, clarify, and standardize the procedures and forms required for a waiver and release upon payment." (Testimony of Steve G. Holloway, lobbyist for bill sponsors)); Hearing on S.B. 206 Before the Assembly Judiciary Comm., 72d Leg. (Nev., May 8, 2003) ("Senate Bill 206 prohibits the prospective waiver of a lien claimant's rights. Doing so is good public policy. . . . Nevada deservedly has a reputation in the construction industry as being the worst state in the western United States in which to do business. Passage of S.B. 206 will do much to negate that reputation." (Testimony of Steve G. Holloway)). To the extent that the subordination provisions are prospective, we conclude that NRS 108.2453 and NRS 108.2457 prohibit the enforcement of those subordination provisions.

However, non-prospective subordination agreements may be enforceable, as neither NRS 108.2453 nor NRS 108.2457 completely prohibit waiver of or impairment to the right to a mechanic's lien after it arises. Therefore, non-prospective subordination agreements may be enforced as long as they meet the statutory requirements of NRS 108.2457. Accordingly, while prospective subordi-

---

[14] "[I]n 2003, the Legislature amended NRS Chapter 108 to prohibit lien waivers unless such waivers comply with the statutory requirements outlined in NRS 108.2453 and NRS 108.2457." *Lehrer McGovern Bovis v. Bullock Insulation*, 124 Nev. 1102, 1115 n.39, 197 P.3d 1032, 1041 n.39 (2008); *see* 2003 Nev. Stat., ch. 427, §§ 25-26, at 2590-95.

nation agreements are unenforceable, respondents could have waived those rights provided by law after those rights arose provided that the requirements of NRS 108.2457 were met.

We therefore answer the certified questions as set forth above.

DOUGLAS, SAITTA, GIBBONS, HARDESTY, and PARRAGUIRRE, JJ., concur.