**130 Nev., Advance Opinion 57**
IN THE SUPREME COURT OF THE STATE OF NEVADA

SIMMONS SELF-STORAGE
PARTNERS, LLC, A NEVADA LIMITED
LIABILITY COMPANY; ANTHEM
MINI-STORAGE, LLC, A NEVADA
LIMITED LIABILITY COMPANY;
HORIZON MINI-STORAGE, LLC, A
NEVADA LIMITED LIABILITY
COMPANY; MONTECITO MINI-
STORAGE PARTNERS, LLC, A
NEVADA LIMITED LIABILITY
COMPANY; COLONIAL BANK, A
SUBSIDIARY OF THE COLONIAL
BANCGROUP, INC., A DELAWARE
CORPORATION; WESTAR
DEVELOPMENT CORPORATION
D/B/A WESTAR CONSTRUCTION, A
NEVADA CORPORATION;
CONTINENTAL CASUALTY
COMPANY, A DELAWARE
CORPORATION; WESTERN SURETY
COMPANY; LAKE MEAD PROPERTY;
SILVER CREEK I, LLC; SAFECO
INSURANCE COMPANY OF AMERICA;
STARR STORAGE SYSTEMS, LLC;
AND TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA;
Appellants,
vs.
RIB ROOF, INC., A CALIFORNIA
CORPORATION,
Respondent.

No. 59210

**FILED**

AUG 07 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a final judgment in a mechanic's lien action.
Eighth Judicial District Court, Clark County; Susan Johnson, Judge.

*Affirmed in part, reversed in part, and remanded.*

 

Shumway Van & Hansen and Scott A. Knight and Michael Van, Las Vegas,
for Appellants.

Snell & Wilmer, LLP, and Leon F. Mead, II, and Kelly H. Dove, Las Vegas,
for Respondent.

---

BEFORE HARDESTY, DOUGLAS and CHERRY, JJ.

*OPINION*

By the Court, DOUGLAS, J.:

This opinion addresses a dispute regarding the validity of materialmen's liens under NRS Chapter 108 against six properties and the effect of surety bonds posted to release the liens on four of those properties. Specifically, we consider whether, to establish a lien on a property or improvements thereon under NRS 108.222, a materialman must prove merely that materials were delivered for use on or incorporation into the property or improvements thereon; or, instead, must demonstrate that the materials were actually used for the property or improvements thereon. We conclude that a materialman has a lien upon a property and any improvements thereon for which he supplied materials, in the amount of the unpaid balance due for those materials. Because the district court's finding that respondent supplied the steel at issue for the six properties is supported by substantial evidence, we hold

that respondent established a materialman's lien on each of those properties for the unpaid balance due on the steel delivered.[1]

As to the judgment and surety bonds posted for four of the properties, we conclude that the district court erred by ordering the sale of all six properties. A mechanic's lien is directed at a specific property, requiring the district court to determine the total appropriate charge attributable to that property before ordering its sale. Moreover, because a surety bond replaces a property as security for the lien, the property cannot be sold where a surety bond was posted; instead, the lien judgment should be satisfied from the surety bond. Accordingly, we affirm in part and reverse in part the district court's order, and we remand this matter for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Respondent Rib Roof, Inc., a manufacturer and supplier of steel products, supplied steel for projects on the Anthem, Horizon, Lake Mead, Montecito, Silver Creek, and Simmons properties. Appellant Westar Construction, the general contractor for all six projects, subcontracted with Southwest Steel to furnish and install steel products for the projects. Southwest then contracted with respondent to meet its obligations to Westar.

---

[1]This opinion uses the terms "materialman's lien" and "mechanic's lien" interchangeably as both refer to statutory rights in a property or any improvement thereon provided to a lien claimant. *See* NRS 108.22132; NRS 108.222.

Before delivery, respondent provided notices of intent to furnish materials to Southwest, Westar, each project's owners, and other related parties. The notice for the Lake Mead property contained a provision indicating that the person signing that notice, respondent's bookkeeper Trish Cartwright, could bind respondent in future instruments relating to respondent's right of lien. That notice lacked an authorizing signature from one of respondent's officers. Respondent then shipped the steel products to the particular job sites using bills of lading. Each bill of lading contained three copies: the first copy was signed by the shipping manager after he loaded the steel onto the truck for shipment; the second copy was signed by the truck driver; and the third copy was signed by the consignee upon delivery. Nineteen of the eighty bills of lading at issue lacked consignee signatures. Verne Moser, respondent's CFO and corporate secretary, acknowledged that where consignee signatures were missing, he was not certain that the materials were delivered to the bill of lading's destination address. Appellants did not question respondent's notices of intent to furnish materials or delivery of steel before the liens were recorded, and they presented no evidence that the steel used in the six projects came from another supplier.

Southwest made no payment for the steel furnished for the Lake Mead property but partially paid respondent for the steel furnished for the other five properties. Southwest officer Tom Carroll acknowledged that respondent was owed approximately $1,000,000. Despite only partially paying respondent, Carroll sent Moser an email requesting several lien releases. Moser directed Cartwright to prepare the requested lien release forms. Cartwright's job duties included accounting, bookkeeping, evaluating lien release requests, and preparing lien release

forms. Cartwright knew that she lacked authority to sign the lien releases; respondent's company policy granted that authority only to officers. Nevertheless, on December 15, 2004, Cartwright signed unconditional waiver and lien release forms for the Lake Mead and Silver Creek properties.

Respondent subsequently perfected its mechanics' liens on the six properties, providing the required statutory notices and recording its liens. During that process, appellants did not seek a district court determination that, under NRS 108.2275, the liens noticed were frivolous, made without reasonable cause, or excessive in amount. Respondent then filed a complaint for foreclosure against each property and, pursuant to NRS 108.239(1)-(2), filed notices of lis pendens and published notices of foreclosure. Thereafter, surety bonds totaling 1.5 times the value of respondent's mechanics' liens for the Lake Mead, Silver Creek, Anthem, and Horizon properties were posted and recorded in compliance with NRS 108.2415(1). As a result, respondent amended its complaint to dismiss its lien foreclosure claims against those four properties, replacing them with claims against the sureties and principals on the respective surety bonds.

After a bench trial, the district court issued its final judgment concluding that proving materials were delivered to a job site creates a presumption that those materials were used for the property or an improvement thereon, and that this presumption could be rebutted by showing that the materials were not used in the construction or improvements. After finding that respondent delivered the steel at issue to the job sites for the six projects and that appellants failed to rebut the presumption this delivery created, the district court concluded that respondent established liens on the six properties. The district court also

determined that respondent substantially complied with NRS Chapter 108's requirements to perfect and execute those liens, and that the lien waivers were ineffective because Cartwright lacked authority to bind respondent.

In determining respondent's award, the district court calculated the amount of the mechanic's lien for each property, awarding pre- and post-judgment interest on those amounts. The district court also awarded $129,667 in attorney fees and $26,541.81 in costs to be charged jointly against all properties. The district court then ordered that, to the extent that the lien release bonds were insufficient to pay the respective sums due, the six properties were to be sold to satisfy the judgment. Thereafter, the district court ordered the sale of all six properties without determining the total appropriate charge attributable to each property or demonstrating that each surety bond was insufficient to pay the sum due on its respective property. This appeal followed.

## DISCUSSION

### Lien rights

"A mechanic's lien is a statutory creature" designed "to provide contractors secured payment for their work and materials" because they are generally in a vulnerable position. *In re Fontainebleau Las Vegas Holdings, L.L.C.*, 128 Nev. ___, ___, 289 P.3d 1199, 1210 (2012). To effectuate that purpose, we have held that these "statutes are remedial in character and should be liberally construed." *Id.* (internal quotation marks omitted).

We review questions of statutory interpretation de novo, *see Bisch v. Las Vegas Metro. Police Dep't*, 129 Nev. ___, ___, 302 P.3d 1108,

SUPREME COURT
OF
NEVADA

(O) 1947A

6

1114 (2013), and we construe unambiguous statutory language according to its plain meaning unless doing so would provide an absurd result. *Cal. Commercial Enters. v. Amedeo Vegas I, Inc.*, 119 Nev. 143, 145, 67 P.3d 328, 330 (2003). Additionally, this court interprets "provisions within a common statutory scheme 'harmoniously with one another in accordance with the general purpose of those statutes'" to avoid unreasonable or absurd results and give effect to the Legislature's intent. *S. Nev. Homebuilders Ass'n v. Clark Cnty.*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005) (quoting *Washington v. State*, 117 Nev. 735, 739, 30 P.3d 1134, 1136 (2001)).

As a preliminary matter, appellants argue that *Opaco Lumber & Realty Co. v. Phipps*, 75 Nev. 312, 340 P.2d 95 (1959), controls. In *Opaco*, we concluded that a materialman only has a lien for materials proved either to have been delivered to the building site or to have gone into the structure. *Id.* at 316, 340 P.2d at 97. Respondent contends that the Legislature's enactment of NRS 108.222 in 1965 and its subsequent amendments supersede *Opaco*'s holding. To determine the effect of NRS 108.222 on our decision in *Opaco*, we must construe the statute's provisions.[2]

---

[2]Because the acts herein occurred before October 1, 2005, the effective date of the 2005 amendments to NRS Chapter 108, we interpret the 2003 version of NRS Chapter 108. *See* 2005 Nev. Stat., ch. 428, at 1892-1918; S.B. 343, 73d Leg. (Nev. 2005); 2003 Nev. Stat., ch. 427, at 2587-2620; S.B. 206, 72d Leg. (Nev. 2003). Unless otherwise stated, all further references in this opinion to NRS Chapter 108 are to the 2003 enactment.

The parties dispute the plain meaning of NRS 108.222, which states that ". . . a lien claimant has a lien upon the property and any improvements for which the work, materials and equipment were furnished," in the amount of any unpaid balance of the agreed upon price. Reading NRS 108.22144's definition of "[m]aterial[s]" into NRS 108.222, appellants assert that a lien right only exists when a lien claimant proves that the materials were "used" for the property or an improvement thereon. Respondent avoids the definition of "[m]aterial[s]," instead advocating for a liberal construction of "furnish[ ]" requiring only delivery.

In construing NRS 108.222, we begin with the term "furnish[ ]." Furnish means "[t]o supply, provide, or equip, for accomplishment of a particular purpose." *Black's Law Dictionary* 675 (6th ed. 1990). "[F]urnish[ ]" therefore encapsulates a variety of situations, including one where a materialman delivers materials for a property or improvement thereon to a subcontractor. Notably, neither this definition nor NRS 108.222 requires materials to be delivered to a specific location, such as the work site. The absence of such a requirement comports with NRS Chapter 108's remedial purpose by protecting claimants from the possibility that lien rights could be circumvented by having materials delivered to secondary locations, such as preparatory or storage sites.

As defined in NRS 108.22144, "'[m]aterial' means appliances, equipment, machinery and substances affixed, used, consumed or incorporated in the improvement of property or the construction, alteration or repair of any improvement, property or work of improvement." Appellants incorporate this definition into NRS 108.222 and argue that supplied materials must be "used" in an improvement before a materialman is entitled to a mechanic's lien. Appellants'

SUPREME COURT
OF
NEVADA

(O) 1947A

8

interpretation of NRS 108.222 incorporating NRS 108.22144's plain meaning is unsustainable because it leads to an absurd result. Specifically, reading NRS 108.22144 into NRS 108.222 is problematic because one cannot furnish "materials" for a property or improvement thereon that were already used for that property or improvement. To avoid that absurd result, we effectuate the Legislature's intent to protect lien claimants, *Fontainebleau*, 128 Nev. at ___, 289 P.3d at 1210, and construe NRS 108.222 to encompass materials used or to be used for a property or improvement thereon. This interpretation provides broader protection for materialmen and is consistent with the 2005 amendments to NRS 108.22144, which added the phrase "used or to be" used to the definition of "[m]aterial." 2005 Nev. Stat., ch. 428, § 8, at 1897; *see also In re Estate of Thomas*, 116 Nev. 492, 495, 998 P.2d 560, 562 (2000) (noting that an amendment to a statute can be persuasive evidence of what the Legislature intended in the previous statute).

We therefore hold that under NRS 108.222, a materialman has a lien upon a property and any improvements thereon for which he supplied materials. A materialman does not need to prove that the materials that he supplied were used or incorporated into the property or improvements; rather, he must prove that they were supplied for use on or incorporation into the property or improvements thereon.[3] Accordingly, to

---

[3]This holding in no way detracts from NRS Chapter 108's other requirements to perfect and execute a lien. Recognizing the district court's diligence in examining our sister state courts' split on this issue, we decline to rely on their precedent in reaching our decision because Nevada's mechanic's lien statutes contain unique language. *Fontainebleau*, 128 Nev. at ___, 289 P.3d at 1211.

SUPREME COURT
OF
NEVADA

(O) 1947A

9

the extent that *Opaco* is inconsistent with this construction, we conclude that it has been superseded by the Legislature's enactment of, and subsequent amendments to, the mechanic's lien statutes. *See generally Jacobson v. Estate of Clayton*, 121 Nev. 518, 119 P.3d 132 (2005) (determining that a legislative amendment superseded a previous and inconsistent decision by this court).

*Supplied materials*

With this holding in mind, we review the district court's finding that respondent supplied steel for the six properties and projects at issue. A district court's findings must be supported by substantial evidence. *See Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 238, 955 P.2d 661, 664 (1998). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "[W]here conflicting evidence exists, all favorable inferences must be drawn towards the prevailing party." *Id.*

We conclude that the district court's finding that respondent delivered the steel at issue is supported by substantial evidence. While nineteen of the eighty bills of lading lacked consignee signatures, they contained two other signatures from the shipping manager and truck driver. And, although Moser admitted that he was uncertain that the nineteen orders lacking consignee signatures were delivered to the proper addresses, appellants never objected to respondent's lien notices. Finally, each project used the type of steel that respondent supplied, and Carroll acknowledged that respondent was owed approximately $1,000,000 for materials it provided. Construing the conflicting evidence in favor of respondent as the prevailing party, a reasonable mind might accept the available evidence as adequate to support the district court's conclusion.

Based on the foregoing, we affirm the district court's decision that respondent satisfied NRS 108.222's requirements and established liens on the six properties.

*Waiver*

Having determined that respondent established a valid mechanic's lien for each of the six properties, we now consider appellants' waiver argument. NRS 108.2457(1) provides specific guidelines for waivers and releases, stating in pertinent part:

> Any written consent given by a lien claimant that waives or limits his lien rights is unenforceable unless the lien claimant:
>
> (a) Executes and delivers a waiver and release that is signed by the lien claimant or his authorized agent in the form set forth in this section; and
>
> (b) In the case of a conditional waiver and release, receives payment of the amount identified in the conditional waiver and release.

Based on these provisions, appellants assert that respondent waived its liens on the Lake Mead and Silver Creek properties because Cartwright was respondent's authorized agent and executed unconditional waiver and lien release forms for those properties per NRS 108.2457(1)(a). Respondent replies that Cartwright lacked authority to bind respondent when signing the lien release forms.

The document at issue is alleged to be an unconditional waiver, eliminating NRS 108.2457(1)(b)'s applicability. Therefore, unless the waiver at issue was signed and delivered by the lien claimant or its authorized agent, the waiver was unenforceable. *See* NRS 108.2457(1)(a). Because delivery is not at issue, we only consider whether Cartwright was authorized to bind respondent.

Generally, the existence of an agency is a question of fact. *N. Nev. Mobile Home Brokers v. Penrod*, 96 Nev. 394, 397, 610 P.2d 724, 726 (1980). Accordingly, this court will uphold the district court's agency determination as long as it is "not clearly erroneous" and "supported by substantial evidence." *Sowers v. Forest Hills Subdivision*, 129 Nev. ___, ___, 294 P.3d 427, 432 (2013).

"To bind a principal, an agent must have actual authority . . . or apparent authority." *Dixon v. Thatcher*, 103 Nev. 414, 417, 742 P.2d 1029, 1031 (1987). Although we have discussed actual authority in the past, we have never expressly defined it. We now adopt the Restatement's definition. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01 (2006). When examining whether actual authority exists, we focus on an agent's reasonable belief. *Id.* § 2.02 & cmt. e ("Whether an agent's belief is reasonable is determined from the viewpoint of a reasonable person in the agent's situation under all of the circumstances of which the agent has notice.").

Here, Cartwright admitted that she lacked authority to execute the lien release forms. Her limited job duties validate this admission. Although Cartwright's signature on the Lake Mead notice of intention to furnish materials purported to make her signature binding for all matters related to respondent's liens for the Lake Mead property, the notice lacked an appropriate authorizing signature. Additionally, while Moser directed Cartwright to prepare the lien release forms, nothing in his email suggested that Cartwright should or could sign them. Thus,

substantial evidence supports the district court's finding that Cartwright lacked actual authority because she had no reasonable basis for believing that respondent authorized her to sign the release forms.

"Apparent authority is 'that authority which a principal holds his agent out as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the principal from denying its existence.'" *Dixon*, 103 Nev. at 417, 742 P.2d at 1031 (quoting *Myers v. Jones*, 99 Nev. 91, 93, 657 P.2d 1163, 1164 (1983)). As stated in *Ellis v. Nelson*:

> [T]here can be reliance only upon what the principal himself has said or done, or at least said or done through some other and authorized agent. The acts of the agent in question can not be relied upon as alone enough to support [this theory]. If his acts are relied upon[,] there must also be evidence of the principal's knowledge and acquiescence in them. Moreover, . . . the reliance must have been a reasonable one . . . .

68 Nev. 410, 419, 233 P.2d 1072, 1076 (1951) (internal quotation marks omitted).

Appellants offer no evidence that respondent held Cartwright out as having authority to certify the lien release forms. Therefore, under *Ellis*, appellants must show that they reasonably relied on Cartwright's acts, and that respondent knew of and acquiesced to those acts. Appellants arguably could have relied on two of Cartwright's acts: her providing them with the notice of intention to furnish materials that purportedly gave her authority to bind respondent, but was signed only by herself, and her subsequent execution of the two lien release forms. However, even assuming appellants reasonably relied on these acts, they offered no evidence or argument that respondent knew of or acquiesced to

the acts. Thus, substantial evidence also supports the district court's finding that Cartwright lacked apparent authority.

Accordingly, Cartwright was not an authorized agent under NRS 108.2457(1)(a) and could not have released the liens for the Lake Mead and Silver Creek properties on respondent's behalf. We therefore affirm this portion of the district court's decision.

*Surety bonds*

Appellants argue that the district court erred by ordering the sale of the Lake Mead, Silver Creek, Anthem, and Horizon properties. Specifically, appellants claim that the posting of surety bonds for the four properties in compliance with NRS Chapter 108 released each property's mechanic's lien. Respondent contends that the district court ordered the sale of the four properties to satisfy the judgment only if the bonds were insufficient.[4]

Under NRS 108.2413, "[a] lien claimant's lien rights or notice of lien may be released upon the posting of a surety bond in the manner provided in NRS 108.2415 to 108.2425, inclusive." "To obtain the release of a lien for which notice of lien has been recorded against the property, the principal and a surety must execute a surety bond in an amount equal to 1.5 times the lienable amount in the notice of lien . . . ." NRS 108.2415(1). "Subject to the provisions of NRS 108.2425, the recording and service of the surety bond pursuant to . . . [NRS 108.2415(1)] releases

---

[4]All references to NRS Chapter 108 in this section addressing appellants' surety bonds refer to the 2005 enactment in effect when the bonds were filed.

the property described in the surety bond from the lien and the surety bond shall be deemed to replace the property as security for the lien." NRS 108.2415(6)(a).

As the district court recognized in its order, appellants properly posted surety bonds for the Lake Mead, Silver Creek, Anthem, and Horizon properties, releasing the liens on these properties. NRS 108.2415(6). Respondent did not challenge the validity of the surety bonds, and thus, each surety bond replaced its corresponding property as security for the lien. *Id.* This means that a judgment awarded to respondent for one of those four properties would not be against the property, but against the respective surety, up to the amount of the bond, and against the principal for any amounts in excess of the bond amount. NRS 108.2421(6); NRS 108.2423(1). The total judgment amount includes the lienable amount, plus costs, attorney fees, and interest under NRS 108.237. *See* NRS 108.2421(6).

For a property not released by a surety bond, NRS 108.239(10) provides that, upon determining the lien amounts owed on that property, a district court must order the sale of the property to satisfy all amounts awarded to a lien claimant. Amounts awarded to a prevailing lien claimant in such a case include the lienable amount due, interest, attorney fees, and costs. NRS 108.237. However, "a property subject to a mechanic's lien should not be responsible for the improvement costs of another property. . . . [A]pportionment must be adjudicated on the merits to determine the appropriate charge attributable to each individual property." *Pickett v. Comanche Constr., Inc.*, 108 Nev. 422, 430, 836 P.2d 42, 47 (1992). In other words, a district court cannot order the sale of a

property to satisfy a lien on a separate property or charges associated with that lien per NRS 108.237.

Despite the statutory lien releases for the Lake Mead, Silver Creek, Anthem, and Horizon properties, the district court ordered these properties, along with the Montecito and Simmons properties, to be sold in satisfaction of the total judgment. In doing so, the district court erred for the following reasons. First, the district court failed to determine the total appropriate charge attributable to each individual property, *Pickett*, 108 Nev. at 430, 836 P.2d at 47, making it impossible to determine whether the applicable bonds or property sales would satisfy those judgments. Second, the district court ordered the sale of the Lake Mead, Silver Creek, Anthem, and Horizon properties despite the fact that surety bonds had been posted for these properties, releasing their respective liens.[5] We therefore reverse the district court's decision as to these issues.

On remand, the district court must calculate the appropriate charge attributable to each property based on the principal, pre- and post-judgment interest, and apportioned shares of attorney fees and costs. The district court must then charge the Montecito and Simmons properties their respective amounts of the judgment, and charge the four surety bonds their respective amounts.[6] The district court may then order the

---

[5]The district court properly ordered the sale of the Montecito and Simmons properties because no surety bond released their respective liens. Still, the district court must charge the Montecito and Simmons properties their respective amounts of the judgment.

[6]We note that appellants listed a number of issues in their opening brief without substantively addressing them. Because appellants failed to provide us with relevant authority and cogent arguments on those issues,

*continued on next page . . .*

SUPREME COURT
OF
NEVADA

(O) 1947A

Montecito and Simmons properties sold, and enter judgment against the sureties on their respective bonds for the other four properties. Only upon showing that an individual surety bond is insufficient in relation to its respective charge can the district court take further action against that bond's principal to satisfy that judgment.

Based on the foregoing analysis, we affirm in part, reverse in part, and remand this matter to the district court for further proceedings consistent with this opinion.

_____, J.
Douglas

We concur:

_____, J.
Hardesty

_____, J.
Cherry

_____

. . . *continued*

we decline to address them. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987).